UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RANDY BORDELON, et al. | CIVIL ACTION |
| VERSUS | NO: 25-00725 |
| JEFFERSON PARISH SHERIFF'S OFFICE, et al. | SECTION: T (5) |

## **ORDER AND REASONS**

Before the Court is a second Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Joseph Lopinto and Wade St. John.[1] R. Doc. 22. Plaintiffs Randy Bordelon and Beth Bordelon have filed a response in opposition. R. Doc. 27. After reviewing the pleadings and the applicable law, the Court will deny Defendants' Motion to Dismiss.

**BACKGROUND**

In his Complaint filed in state court, which was removed to this court, and his Amended Complaint (R. Docs. 2-1 and 15), Plaintiff essentially alleges that, at approximately 11:00 p.m. on January 23, 2025, Plaintiff and his wife Beth Bordelon were asleep at their residence located at 7909 Jefferson Highway, Harahan, LA, when they were awakened by deputies from the Jefferson

---

[1] Defendants' first Motion to Dismiss was dismissed without prejudice after Plaintiffs were permitted to file an Amended Complaint. R. Doc. 28.

1

Parish Sheriff's Office. The deputies had set up a perimeter in the area searching for a rape suspect. They inquired of Plaintiff if his security system had caught anyone on his cameras. Plaintiff attempted to comply with their request, but because of a technical problem, he could not retrieve any video at that time. Shortly thereafter, Plaintiff decided to search the rear of his property where a two-story workshop and stall for the family pony were located. Concerned for the safety of his family (his wife and two daughters), Plaintiff brought his handgun with him into the workshop, turning on the lights in the building and going up to the upper floor of his workshop. As he was coming down the stairs from the second story, Sheriff's Deputy Wade St. John saw Plaintiff in the building through a window carrying his handgun. The deputy commanded Plaintiff to put the handgun down. Plaintiff hesitated briefly not realizing the deputy was talking to him. He pointed his gun down and finally put the gun down into a planter.[2]

Deputy St. John then proceeded to strike Plaintiff in the throat area with his hand causing him to fall backward over the planter. Plaintiff alleges he did not make a threatening move against the deputy, which would justify striking Plaintiff in this manner. The deputy further did not instruct Plaintiff to back away from the planter or to move away from the gun. Deputy St. John then kicked Plaintiff in the groin area several times causing injury to his groin area, while on the ground in a

---

[2] Plaintiff argues that in their second Motion to Dismiss, defendants argue his use of the word "finally" suggested "an extended period of time. However, Plaintiff contends the use of the adverb "finally" was only to indicate the last point or step in the original confrontation with Deputy St. John and in not meant to indicate there was some kind of extended period before he complied.

defenseless position and not within the wingspan of the gun. Plaintiff picked himself up and the deputies escorted him to the rear of his residence where they spoke with him about having a firearm while they were in the area.

Plaintiff and his wife filed suit alleging a violation of 42 U.S.C. § 1983, namely excessive force, and various state law claims including loss of consortium. Defendants have filed a Motion to Dismiss for Failure to State a Claim.

LAW and ANALYSIS

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3 228, 239 (5th Cir. 2009). Nevertheless, the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. Id. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*,

3

565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insurmountable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

Section 1983 affords citizens the ability to sue police officers for deprivation of statutory or constitutional rights stemming from the use of excessive force. 42 U.S.C. § 1983. Such claims encompass two foundational elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Wollfarth v. New Orleans City*, Civ. A. No. 20-01537, 2021 WL 6496847, *2 (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). On the other hand, the doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Id.*

In light of these interests, the Supreme Court established in *Katz v. Saucier* a two-prong sequence for resolving government officials qualified immunity claims. *Id.* at 232 (citing *Katz v. Saucier*, 533 U.S. 194 (2001)). First, a court must decide whether the facts alleged establish a violation of a constitutional right. *Id.* (citing *Katz v. Saucier* at 201). Second, if the plaintiff has

satisfied this first step, the court must then decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. *Anderson v. Creighton*, 483 U. S. 635, 640 (1987). The Supreme Court has since reconsidered the inflexibility of *Katz v. Saucier* by granting lower court judges discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the particular case at hand. *Wollfarth*, supra, at *2 (citing *Pearson*, 555 U.S. 223, 236). Even if the evidence supports a conclusion that plaintiff's rights were violated, qualified immunity may still be invoked unless "the government officials violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009). "Qualified "immunity shields from civil liability all but the plainly incompetent or those who knowingly violate the law." *Id.*

When the defense of qualified immunity is raised in a motion to dismiss, "it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). A court must determine that a plaintiff's pleadings "assert facts which, if true, would overcome the defense of qualified immunity." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014). A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Blacke v. LeBlanc*, 692 F.3d 645, 648 (5th Cir.

5

2012).

Here, Defendants argue that Deputy St. John did not use excessive force. The elements of an excessive force claim under the Fourth Amendment are: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (quoting reference omitted). "The second and third elements collapse into a single objective-reasonableness inquiry." *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018). The reasonableness of a deputy's use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396. "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien v. North Carolina*, 574 U.S. 54, 60–61, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014) (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). A court's analysis "turns on the facts of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6, 142 S.Ct. 4, 211 L.Ed.2d 164 (2021) (quoting *Graham*, 490 U.S. at 396). "This list is not exclusive, however, and the Court may examine the totality of the circumstances." *Drumgole*

6

*v. Frumveller*, No. 14-2827, 2015 WL 2250134, at *8 (E.D. La. May 13, 2015). Moreover, the Fifth Circuit has frequently held that takedown procedures used to control unhandcuffed, non-subdued suspects are lawful means of effecting an arrest. *Buehler v. Dear*, 27 F.4th 969, 989 n. 67 (5th Cir. 2022); *see also Bailey v. Ramos*, 125 F.4th 667, 682 (5th Cir. 2025).

The Court, however, in deciding a Rule 12(b)(6) motion must accept all well-pleaded facts as true and view them in the light most favorable to the Plaintiff. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986). Defendants assert that the pursued subject was a rape suspect, which weighs heavily in Deputy St. John's favor. Defendants argue that Plaintiff need not have committed the crime, only that he was suspected of criminal activity. Here, Plaintiff admitted in his petition that despite being warned that a K-9 would assist in a nighttime, snow-covered search for a rape suspect, he armed himself and entered the search area without notifying the deputies. Further, Defendants point to the language in the pleading suggesting that Plaintiff did not put down his weapon immediately when ordered to do so.

While it is a close question, the Court can reasonably infer that the officers might have used excessive force under the circumstances of this incident. Especially where they initially spoke to Plaintiff and asked for his help in reviewing camera footage, and Plaintiff did ultimately comply with the command to put his weapon down before he was struck. Notwithstanding the Court's finding that Plaintiff has minimally satisfied the pleading standard by alleging facts essential to the establishment of a violation of his rights, relief is not guaranteed. The issues pertaining to the question of excessive force and qualified immunity are questions better suited for summary

7

judgment or trial. For pleading purposes, however, Plaintiff has stated a claim upon which relief may be granted.

Accordingly,

**IT IS ORDERED** that Motion to Dismiss for Failure to State a Claim is DENIED.

New Orleans, Louisiana, this 31st day of March 2026.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

8